## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-01015-RBJ

AARON, BELL INTERNATIONAL, INC., a Colorado corporation,

    Plaintiff,

v.

JOHN ROWELL, an individual,

    Defendant.

---

## DEFENDANT AND COUNTERCLAIM PLAINTIFF JOHN ROWELL'S
## MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Federal Rule of Civil Procedure 56, Defendant and Counterclaim Plaintiff John Rowell ("Mr. Rowell") respectfully moves this Court to enter judgment in his favor on all claims made against him by Plaintiff Aaron, Bell International, Inc. ("ABI").

This lawsuit is based not at all in fact, but is driven entirely by conjecture and ABI President Ralph Bellizzi's personal animosity toward Mr. Rowell, ABI's former Chief Operating Officer. The gist of this case is that ABI claims that Mr. Rowell tried to take one of its investment banking clients, Skilcraft LLC ("Skilcraft"), for his own. But the unrebutted facts—including Skilcraft's documents and testimony—demonstrate that Skilcraft had decided to stop working with ABI for its own reasons, had no intention of seeking to work with Mr. Rowell after he left ABI, and, indeed, no longer planned to try to sell the business at all. Likewise, ABI's claim that Mr. Rowell disparaged ABI to Skilcraft is contradicted by Skilcraft's testimony and documents. ABI's claims are specious and should be dismissed.

## INTRODUCTION

Although Mr. Bellizzi had recruited Mr. Rowell to join ABI, not long after Mr. Rowell started work there, Mr. Bellizzi became belligerent and hostile, repeatedly berating and degrading Mr. Rowell.[1] Eventually, Mr. Bellizzi's verbal abuse became so severe that Mr. Rowell concluded he had to leave ABI.

About a month after his departure, Mr. Rowell received a letter from ABI informing him that he had been terminated for cause for allegedly trying to usurp one of ABI's former clients, Skilcraft, and for allegedly disparaging ABI to Skilcraft.

Even though Mr. Rowell assured ABI that none of the allegations were true and even though the most modest amount of research would have revealed that to be the case, ABI did not relent and two months later proceeded to file suit against Mr. Rowell, repeating its allegations that Mr. Rowell had attempted to usurp the Skilcraft deal and had disparaged ABI to Skilcraft. It also asserted that Mr. Rowell failed to immediately return all ABI materials in his possession after his termination from ABI.

After filing the case, ABI made virtually no effort to advance the lawsuit and took every opportunity to stall (for instance, failing to produce even a single document for months, despite Mr. Rowell's repeated requests). The reason for ABI's lassitude is clear—it recognizes that its case is utterly meritless. Nevertheless, Mr. Rowell has undertaken discovery, which has unequivocally established the failure of ABI's case.

---

[1] Mr. Bellizzi's behavior around this time was so egregious that it caused at least two other former employees to sue him: *see James v. Aaron, Bell Int'l, Inc., et al.*, 2017-CV-34323 (Denver Dist. Ct.) and *Dipaola v. Aaron, Bell Int'l Inc., et al.*, 2017-CV-31664 (Denver Dist. Ct.). *See Muragara v. Moneygram Payment Sys. Int'l*, No. 15-CV-00939-MEH, 2016 WL 30647, at *1 (D. Colo. Jan. 4, 2016) (court may take judicial notice of other lawsuits); *In re Interrogatory Propounded by Governor Roy Romer on House Bill 91S-1005*, 814 P.2d 875, 880 (Colo. 1991) (court may take judicial notice of matters of public record).

Indeed, documents requested by Mr. Rowell from Skilcraft prove beyond a doubt that Mr. Rowell in no way attempted to usurp the Skilcraft deal. Similarly, Skilcraft's 30(b)(6) deponent confirmed that Mr. Rowell never, ever made any derogatory, disparaging, or false comment about ABI to Skilcraft. Finally, ABI's own interrogatory answers foreclose its claim regarding Mr. Rowell's supposed failure to immediately turn over ABI's property after his termination, by confirming that he did, in fact, return all ABI's materials within a month after his termination and, further, by conceding that ABI has not actually suffered any damages as a result of this supposed breach.

In short, discovery has not borne out a single cause of action alleged in ABI's complaint. Instead, it has only revealed ABI's true motive in filing this lawsuit: to harass and burden Mr. Rowell.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      ABI is a Colorado Corporation that offers investment banking consultation services. Compl. ¶ 1.

2.      Mr. Rowell joined ABI on or around January 4, 2016, ECF No. 13 at 1, serving as the company's Executive Vice President and Chief Operating Officer. Compl. ¶ 2.

3.      After a short time at ABI, Mr. Bellizzi's behavior became so abusive and hostile that Mr. Rowell concluded that he could no longer tolerate working with Mr. Bellizzi, so in September 2017, Mr. Rowell executed a "Transition Employment Agreement and Release of All Claims" (the "Transition Agreement"), in which he agreed that he would transition out of the company after he completed his four pending transactions. *See* ECF No. 13 at 2-3.

4.      The fourth and final deal that Mr. Rowell was to close was the sale of Skilcraft. Mr. Rowell worked diligently and expertly and was successful in generating significant interest

in the company, resulting in multiple indication of interest letters and even two purchase offers. *See* Skilcraft LLC 30(b)(6) Dep. ("Skilcraft Dep.") 48:19-52:8 (describing interest in sale generated), 41:18-21 (testifying regarding Mr. Rowell's efforts to create a transaction for Skilcraft), Jan. 11, 2019 (Herzig Decl. Ex. A). However, although the offers were attractive, they were lower than Skilcraft desired. *See id.* at 52:24-53:3.

5.      At that point, Skilcraft concluded that it had exhausted all its options and determined that it was no longer interested in trying to sell the company, so it terminated its agreement with ABI on December 5, 2017. *See id.* at 31:17-23, 57:14-18, 58:12-15, Ex. 11.

6.      Even though ABI was no longer representing Skilcraft, the agreement between the two companies provided that, if Skilcraft sold its business within the subsequent eighteen months, ABI would still receive all its fees due under the agreement. *Id.* at 38:8-24, 40:9-13.

7.      Skilcraft has not made any attempt to sell its company since that time. *See id.* at 31:3-10, 39:23-40:1, 58:12-15. Mr. Rowell has not contacted Skilcraft about doing business or attempted to work with Skilcraft in any way since Skilcraft terminated its business with ABI. *Id.* at 40:2-8.

8.      On January 10, 2018, ABI blindsided Mr. Rowell by sending him a letter inexplicably terminating him for cause (the "January 10 Letter"). *See* Ltr. from D. Kitson to J. Rowell, Jan. 10, 2018 (Herzig Decl. Ex. B).

9.      The letter asserted that Mr. Rowell had "intentionally subverted and attempted to divert the transaction that ABI carefully developed with Skilcraft" and had "openly disparaged and defamed ABI." *Id.* at RW000030995. It also demanded that Mr. Rowell return all information belonging to ABI and instructed Mr. Rowell to contact ABI's attorneys on or before January 12, 2018 to discuss the forensic imaging of his electronic devices. *Id.*

10.     On January 12, 2018, Mr. Rowell communicated with attorneys representing ABI and indicated that he would return the materials. *See* ABI Resp. to Rowell Interrog. No. 3 (Herzig Decl. Ex. C). The two parties coordinated to select a forensic vendor, which extracted ABI's information from Mr. Rowell's phone and laptop. *Id.* ABI admits that the removal of this information was completed on February 2, 2018. *Id.*

11.     At the same time, Mr. Rowell attempted to sort out what basis ABI could possibly have for the claims made in its January 10 Letter. In subsequent conversations, ABI informed Mr. Rowell that it had "intercepted" a January 2, 2018 email[2] purportedly sent to him from someone named Patrick Vaughan at a company called First Line Advisors LLC ("First Line") with a subject reading: "Skilcraft." *See* ABI (Rowell) 0917 (Herzig Decl. Ex. D). The email stated "[t]hank you for taking the time to speak with me today re: Skilcraft. As a follow-up, I'd like to discuss potential next steps tomorrow with you and my colleague, Alison Kennedy." *Id.* The email also states: "please reply to this email to confirm you received this." *Id.*

12.     Mr. Rowell did not reply confirming receipt and has no recollection of this email or of any conversation with Mr. Vaughan, his colleague, Ms. Kennedy, or with anyone at First Line. *See* Rowell Resp. to ABI Request for Admission No. 7 (Herzig Decl. Ex. E). There is no evidence that ABI ever attempted to verify with First Line that any such discussion had actually taken place or the nature of the conversation.

13.     Instead, despite the fact that Mr. Rowell had no knowledge of First Line and no recollection of any conversation with anyone at that company, and even though Mr. Rowell had

---

[2] The document produced by ABI shows a "to" address of jrowell@aaron*bell.com; however, Mr. Rowell's email address was jrowell@aaron-bell.com. ABI has failed to produce any metadata for any of the documents produced, including this one, so it is impossible to verify the sender or recipient of this alleged communication or the date it was supposedly sent.

complied in turning over ABI materials, ABI nevertheless filed suit against Mr. Rowell on March 30, 2018.

14.      The Complaint asserts that Mr. Rowell breached the Transition Agreement in three ways: First, by supposedly attempting to divert or usurp the Skilcraft deal from ABI and failing to keep the existence of the deal confidential. *See* Compl. ¶ 25. Second, by allegedly disparaging ABI to Skilcraft. *See id.* ¶ 26. Third, by purportedly failing to return all his ABI materials "immediately" upon termination. *See id.* ¶ 27. It also averred a variety of other causes of action premised on these same allegations.

15.      Knowing that these claims were unfounded, Mr. Rowell proceeded to subpoena Skilcraft's documents. Among Skilcraft's production was a January 4, 2018 email (the "January 4 Email") sent from Patrick Vaughan of First Line to John Zurborg, Skilcraft's CEO, which makes abundantly clear that Mr. Rowell made no effort to usurp the Skilcraft deal. *See* Skilcraft Dep. Ex. 7 (Herzig Decl. Ex. A). This email reads:

> We have a client who has an interest in your fabrication division. Upon some hunting, we learned that you are being represented by John Rowell, and therefore reached out to him. My colleague made a couple of attempts, leaving multiple voicemail messages. No response. I also called John, and finally was able to reach him. He informed me that you may be "close" to finishing the transaction, therefore I asked for clarity if he wanted to speak further or if the deal was done. He said he would contact me the next morning but I never heard from him. Based on the transaction being close to the finish line, I tried calling him multiple times. After my last attempt, he sent me a text to leave him alone. Based on this, I decided I would reach out to you directly to see if you are interested in a potential investment in/buyout of your fabrication division.

*Id.*

16.      Mr. Rowell also deposed Mr. Zurborg as Skilcraft's 30(b)(6) representative. Mr. Zurborg's testimony further proves that ABI's complaint is baseless.  He testified that:

a.  Mr. Rowell never attempted to subvert, divert, or usurp the transaction that ABI developed with Skilcraft. *Id.* at 22:4-21, 34:3-9. Mr. Rowell has never attempted to orchestrate Skilcraft's sale through any other investment bank besides ABI. *Id.* at 24:6-9. Mr. Rowell never indicated that he had a relationship with First Line or worked for or with that company. *Id.* at 32:11-19.

b.  Mr. Rowell never interfered with ABI's contractual or prospective business relationship with Skilcraft. *Id.* at 24:10-20.

c.  Mr. Rowell never made disparaging or false comments about ABI. *Id.* at 22:22-23:16; 24:21-25:19.

d.  Skilcraft terminated its relationship with ABI and stopped trying to market its company because it "felt the [sales] process did not reveal an offer that met [its] expectations . . . [and] felt that [it] had exhausted the opportunities that [it was] presented through that process and [it] needed to get back to focusing on the business." *Id.* at 31:17-23. The only reason that it did not pursue one of the offers secured by ABI was because it did not get the valuation for which it had hoped. *Id.* at 66:4-9.

e.  Since Skilcraft terminated its relationship with ABI, it has made no additional efforts to sell the company. *Id.* at 39:17-40:1.

f.  As far as Skilcraft is concerned, *nothing* in the complaint "with regard to Mr. Rowell and diverting business from ABI" is true. *Id.* at 61:7-13.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party must demonstrate the absence of a dispute over any material fact.  Fed. R. Civ. P. 65; *Am. Movie Classics v. Rainbow Media*

*Holdings*, 508 F. App'x 826, 829 (10th Cir. 2013). "A genuine issue of material fact cannot be

established simply by allegations in pleadings or argument; rather, the opposing party must set

forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial."

*People ex rel. A.C.*, 170 P.3d 844, 846 (Colo. App. 2007). "[I]f the evidence presented in

opposition to summary judgment is so incredible that it could not be accepted as true by a

reasonable jury, it cannot serve to create a 'genuine' issue, or dispute, of fact." *Andersen v.

Lindenbaum*, 160 P.3d 237, 239-40 (Colo. 2007), *as modified on denial of reh'g* (June 11, 2007).

"When a nonmoving party has the burden of persuasion at trial, a moving party's initial

burden of production may be satisfied by demonstrating an absence in the record of any material

facts in dispute or an absence of any evidence supporting the nonmoving party's case." *Aller v.

Law Office of Carole C. Schriefer, P.C.*, 140 P.3d 23, 25 (Colo. App. 2005). "If the non-moving

party cannot produce enough evidence to establish a triable issue, then the moving party is

entitled to summary judgment as a matter of law." *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11, 304

P.3d 239, 244" *Id.*

## ARGUMENT

### I.    There Is No Evidence Mr. Rowell Breached the Transition Agreement (First Claim)

To recover for breach of contract, ABI must prove: (1) the existence of a contract; (2)

that ABI performed under the contract; (3) that Mr. Rowell failed to perform under the contract;

and (4) resulting damages. *Long v. Cordain*, 2014 COA 177, ¶ 19, 343 P.3d 1061, 1067 (Colo.

App. 2014). In its Complaint, ABI asserts that Mr. Rowell allegedly breached his Transition

Agreement in three respects: first, by usurping the Skilcraft deal from ABI and failing to

maintain the confidentiality of the very existence of the deal; second, by failing to immediately

return ABI's materials in his possession, and third, by disparaging ABI. ABI cannot make out a breach of contract claim with respect to any of these claims.[3]

    A.  *Mr. Rowell Did Not Attempt to Usurp the Skilcraft Deal or Fail to Maintain the Confidentiality of the Deal*

At no time, and in no way, did Mr. Rowell attempt to usurp the Skilcraft deal by arranging for the sale of the company through First Line. The record evidence establishes this point unequivocally. For instance, in the January 4 Email from First Line to Mr. Zurborg, Patrick Vaughan explicitly states that they tried repeatedly to get Mr. Rowell to engage with them regarding the Skilcraft sale, but that Mr. Rowell told them to "leave him alone." *See* Skilcraft Dep. Ex. 7 (Herzig Decl. Ex. A). Nothing could be more inconsistent with an effort by Mr. Rowell to divert the Skilcraft transaction to First Line for his own gain.

Mr. Zurborg's deposition further establishes that Mr. Rowell never attempted to subvert the Skilcraft deal. Indeed, Mr. Zurborg expressly and specifically testified that Mr. Rowell had never attempted to usurp the Skilcraft transaction from ABI. *Id.* at 22:4-21. In fact, Mr. Rowell never even mentioned First Line to Skilcraft, much less indicated to Mr. Zurborg that Skilcraft should terminate its relationship with ABI and sell its company through First Line.[4] *Id.* at 32:11-18. Indeed, since Skilcraft terminated its relationship with ABI in December 2017, Mr. Rowell has not tried to work with Skilcraft in any way. *Id.* at 40:5-8.

---

[3] ABI has also failed to perform under the Transition Agreement; however, it is unnecessary to address this particular deficiency here, given ABI's obvious failure to establish Mr. Rowell's breach or its damages.

[4] Moreover, ABI's theories about Mr. Rowell's efforts to scuttle the deal do not even make logical sense. Pursuant to Skilcraft's engagement agreement with ABI, even if Mr. Rowell and First Line somehow managed to conspire to sell off Skilcraft, Skilcraft would still have to pay ABI its fee, Skilcraft Dep. 38:8-24, 40:9-13 (Herzig Decl. Ex. A), meaning it would make no financial sense for Skilcraft to sell through a competing bank.

Nor did Mr. Rowell fail to maintain the confidentiality of the existence of the Skilcraft deal. The January 4 email from Mr. Vaughan makes perfectly clear that First Line learned about the deal on its own and only after learning of the deal did it try to contact Mr. Rowell. *See, e.g.*, *id.* Ex. 7 ("Upon some hunting, we learned that you are being represented by John Rowell … ").

In addition to the fact that there is no truth to either allegation, ABI also cannot prove that either supposed breach caused it any harm. When asked to itemize its damages, ABI identified only the costs incurred to set up the Skilcraft deal and the fee it would have earned had the deal gone through. *See* ABI Resp. to Rowell Interrog. No. 19 (Herzig Decl. Ex. C). However, all of these costs were incurred by December 2017, when Skilcraft terminated ABI and decided to withdraw its company from sale. Thus, these damages necessarily could not have been caused by Mr. Rowell's supposed attempt to usurp the deal or disclosure of confidential information, which ABI does not allege occurred until early January 2018. *See* ABI Resp. to Rowell Interrog. No. 2. Mr. Zurborg's testimony reaffirms this point, as he testified that the only reason Skilcraft stopped the sale was because they no longer wanted to sell the company; it had nothing to do with Mr. Rowell's alleged efforts to lure them away from ABI. Skilcraft Dep. 66:4-9 ("Q: . . . [T]he only reason Skilcraft didn't pursue one of the transactions that ABI brought to it was that you did not get the value that you were looking for out of those offers; is that correct? A: That is correct.") (Herzig Decl. Ex. A). Thus, any fee ABI lost out on was attributable only to its failure to secure an adequate offer, not Mr. Rowell's supposed breaches.

### B.  Mr. Rowell Did Not Disparage ABI

ABI's claim that Mr. Rowell disparaged the company is repudiated absolutely by the record. Although ABI claimed in its responses to Mr. Rowell's interrogatories that Mr. Rowell made disparaging remarks about ABI to Mr. Zurborg, Mr. Zurborg himself stated the exact

opposite during his deposition. He testified repeatedly and unequivocally that Mr. Rowell never made a false statement about ABI, never made a derogatory statement about ABI, and never made a disparaging statement about ABI. *Id.* at 22:22-23:15, 24:21-25:14. His testimony could not be clearer. There is not a single piece of evidence in the record to support ABI's allegations to the contrary.

Furthermore, even if there were not irrefutable evidence that Mr. Rowell never made these disparaging remarks, ABI would still lose because it cannot show that the damages it alleges were caused by these statements. Every damage ABI asserts derives from Skilcraft's termination of the investment banking engagement prior to the sale of the company. *See* ABI Resp. to Rowell Interrog. No. 19 (Herzig Decl. Ex. C). However, Skilcraft specifically stated that the only reason it stopped the sale process and terminated ABI was because the sale process "did not reveal an offer that met [its] expectations"—not because of anything Mr. Rowell supposedly said. *See* Skilcraft Dep. 66:4-9 (Herzig Decl. Ex. A). Thus, Skilcraft's termination of its agreement is entirely unconnected to any supposed derogatory remark by Mr. Rowell and consequently, there likewise cannot be any causal connection between any damage resulting from Skilcraft's termination of its agreement and Mr. Rowell's alleged statements.

### C.  Mr. Rowell Did Not Fail to Turn Over ABI's Information Immediately Upon Notice that ABI Was Terminating the Transition Agreement

ABI's own interrogatory answers foreclose its final breach of contract argument, which alleges that Mr. Rowell is liable for breaching the Transition Agreement for failing to immediately turn over ABI's information upon his termination. The January 10 Letter directed Mr. Rowell to contact ABI on or before January 12 to discuss imaging of his devices and directed him to immediately return his ABI material. He did both. Indeed, ABI concedes in its interrogatory responses that Mr. Rowell contacted it on January 12 and agreed to an information

exchange, that Mr. Rowell *did* return ABI's materials, and that its collection of this information was completed on February 2, 2018—less than a month after it terminated Mr. Rowell. ABI Resp. to Rowell Interrog. No. 3 (Herzig Decl. Ex. C).[5] In short, it is clear that Mr. Rowell worked diligently and in good faith to return all ABI's materials in a timely fashion.

Moreover, ABI has not even alleged that it suffered any damages as a result of Mr. Rowell's supposed failure to turn over all his materials immediately. As noted above, in response to Mr. Rowell's interrogatory on its damages, ABI identified damages arising from the "estimated fee for the lost Skilcraft transaction, coupled with the cost of the man-hours for lead development, preparation of presentation materials, preparing the data room, contacting and managing potential buyers, and paying Defendant Rowell's portion of the progress payments." ABI Resp. to Rowell Interrog. No. 19. Absolutely none of these alleged damages have anything to do with Mr. Rowell's supposed failure to immediately turn over all ABI's documents. Indeed, they were all incurred by December 2017 when Skilcraft terminated its agreement without making a sale, and therefore arose prior to ABI even sending the January 10, 2018 Letter, demanding return of its materials.

## II.  There Is No Evidence Mr. Rowell Is Liable for Misappropriation of Trade Secrets (Second Claim)

In order to state a claim for misappropriation of trade secrets, ABI must allege facts supporting the following elements: (1) plaintiff possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) the defendant knew, or should have known, that

---

[5] In this interrogatory answer, ABI asserts that it had "no choice but to file suit" because Mr. Rowell supposedly "went silent" for two weeks sometime after January 12. This assertion is completely apocryphal. ABI filed this lawsuit on March 30—weeks after Mr. Rowell ended his supposed "silence" and also after ABI admits that Mr. Rowell had completed turning over his ABI information.

the trade secret was acquired by improper means. *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163 (D. Colo. 2018). ABI has not come close to making this showing.

ABI cannot even satisfy the first element. "A party alleging misappropriation of a trade secret must produce evidence 'of the specific types of confidential information . . . with sufficient particularity to identify the existence of its claimed trade secrets.'" *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (quoting *Saturn Sys., Inc. v. Militare*, 252 P.2d 516, 522 (Colo. App. 2011)).

In response to Mr. Rowell's interrogatory requesting ABI to "[i]dentify, with particularity, each and every ABI trade secret, as described in paragraph 30 of the Complaint, that you alleged Mr. Rowell misappropriated, threatened to misappropriate, or will continue to misappropriate," ABI responded: "Rowell misappropriated confidential trade-secret information related to ABI's client Skilcraft."[6] ABI Resp. to Rowell Interrog. No. 6 (Herzig Decl. Ex. C). This completely nonspecific and conclusory statement is not even sufficient to put Mr. Rowell on notice of what information he is alleged to have misappropriated, must less establish that ABI possessed a valid trade secret. *See id.*; *see also, e.g.*, *Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*, No. 13-CV-00143-MSK-BNB, 2015 WL 1469513, at *5 (D. Colo. Mar. 26, 2015) (noting that plaintiff must allege with "sufficient particularity" the information allegedly misappropriated in order for opponent to prepare defense); *see also Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (explaining that although it was not necessary

---

[6] ABI also added that "[u]nder Rule 33(d) of the Federal Rules of Civil Procedure, ABI states that it will produce its business records containing the trade-secret information at issue." ABI Resp. to Interrog. No. 6. ABI has not produced any such documents.

for the plaintiff to disclose "all of the details of its trade secrets, it had to do more than merely allege that it had a 'secret'").

Moreover, as to the second element, when asked to "[i]dentify each and every instance in which Mr. Rowell misappropriated, or threatened to misappropriate, any ABI trade secret," ABI responded only that "Rowell misappropriated confidential trade-secret information related to ABI's client Skilcraft as further articulated in the complaint and interrogatory answers." ABI Resp. to Rowell Interrog. No. 7. Again, this utterly banal assertion is not sufficient to even meet the pleading standard, much less establish a genuine issue of material fact with respect to Mr. Rowell's supposed disclosure or use of any asserted trade secret. *See Animal Care*, 2015 WL 1469513, at *5 (noting that "the circumstances of the misappropriation" must be pled with specificity); *see also Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) (conclusory allegations concerning alleged use of trade secret information were insufficient to state a claim for misappropriation of a trade secret).

Even doing ABI's work for it and assuming that its Complaint intended to assert, however obliquely, that Mr. Rowell is liable for misappropriation of trade secrets for disclosing the *existence* of the Skilcraft deal, ABI's claim still fails. Though something this general could hardly be considered a trade secret, even if it were, Mr. Rowell did not disclose this information to First Line. Mr. Vaughan's email of January 4 makes clear that he had learned about the deal prior to his alleged communication with Mr. Rowell. *See* Skilcraft Dep. Ex. 7 (Herzig Decl. Ex. A).

### III.    There Is No Evidence that Mr. Rowell Disparaged ABI (Third Claim)

Plaintiff must allege six elements to state a claim for commercial disparagement: "(1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's business in

general, to the title to his property, or its quality; (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages." *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007). ABI does not come close.

As noted above, Mr. Zurborg, to whom ABI alleges Mr. Rowell made derogatory and disparaging statements about the company, unequivocally denies that any such statements were made. *See supra*. Indeed, there is not a single piece of documentary evidence supporting these allegations. Nor can ABI demonstrate special damages because all of its alleged damages result from Skilcraft's termination of the sale, which Mr. Zurborg explained resulted entirely from a business decision not to pursue a buyout, not because of any supposedly derogatory statement by Mr. Rowell.[7] *See id.*

## IV.     There Is No Evidence of a Breach of Duty of Loyalty (Fourth Claim)

"[A]n agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency," and therefore, "[i]t follows that an agent has a corresponding duty not to compete with the principal concerning the subject matter of his agency." *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1095 (D. Colo. 2016) (quoting *Lucht's Concrete Pumping, Inc. v. Horner*, 224 P.3d 355, 360 (Colo. App. 2009) (internal citations omitted) (internal quotation marks omitted)).

In response to Mr. Rowell's interrogatory asking ABI to "[i]dentify each and every instance in which Mr. Rowell allegedly breached any duty of loyalty owed to ABI," the company responded:

---

[7] Mr. Rowell does not concede that ABI has satisfied the other elements of this cause of action, but it is unnecessary to address them here, given ABI's obvious failure to demonstrate that any false statement was made or that special damages were incurred.

> ABI alleges Rowell failed to take reasonable measures to protect and maintain the confidentiality of the very existence of the Skilcraft transaction; openly usurped, subverted, and attempted to divert the Skilcraft transaction for his own gain; and disparaged ABI to Skilcraft . . . .

ABI Resp. to Rowell Interrog. No. 13 (Herzig Decl. Ex. C). However, as detailed above, the record reveals that not one of these allegations is true. There is no evidence that Mr. Rowell failed to maintain the confidentiality of the transaction—Mr. Vaughan's January 4 Email makes plain that he was already aware of the sale before he spoke with Mr. Rowell. *See* Skilcraft Dep. Ex. 7 (Herzig Decl. Ex. A). Mr. Vaughan's email likewise demonstrates that Mr. Rowell made no effort to usurp the deal for himself; on the contrary, he rebuffed Mr. Vaughan's efforts sell Skilcraft through First Line. *See id.* Finally, Mr. Zurborg testified, under oath, that Mr. Rowell never said anything disparaging about ABI. *See id.* at 22:22-23:16. In short, there is simply no factual support for any of Mr. Rowell's supposed breaches of his duty of loyalty.

## V. Mr. Rowell Did Not Intentionally Interfere with ABI's Contracts or Prospective Business Advantage (Fifth Claim)

ABI's claims for interference with contract and interference with prospective business advantage fail as well. When asked to "[i]dentify each and every wrongful act allegedly committed by Mr. Rowell that tortiously interfered with any of ABI's existing contracts or prospective business advantage." ABI responded:

> ABI alleges Rowell openly usurped, subverted, and attempted to divert the Skilcraft transaction for his own gain[] and disparaged ABI to Skilcraft . . . . Those actions constitute interference with ABI's prospective business relationship with Skilcraft . . . .

ABI Resp. to Rowell Interrog. No. 16 (Herzig Decl. Ex. C). Mr. Rowell has demonstrated repeatedly above that there is no truth to either allegation. Thus, the factual basis for Mr. Rowell's supposed interference is simply non-existent.

Even if ABI could prove these allegations, it still could not make out its claim for intentional interference. Mr. Zurborg made plain that Skilcraft had no knowledge of *any* attempt by Mr. Rowell to divert the sale of its company or any derogatory or false comments made about ABI by Mr. Rowell. *See* Skilcraft Dep. 22:4-23:16 (Herzig Decl. Ex. A). If Skilcraft was not aware of such alleged conduct, then it could, by definition, not have interfered with Skilcraft's relationship with ABI.

ABI's interference claims are fundamentally flawed in other respects as well. First, Mr. Rowell's supposed attempts to usurp the Skilcraft sale, in addition to being false, cannot even support an interference with contract claim because, in January 2018 when Mr. Rowell's alleged attempts to undermine the deal supposedly occurred, there was not even a contract between Skilcraft and ABI with which to interfere, as Skilcraft had terminated their agreement a month earlier. *See Condo v. Conners*, 271 P.3d 524, 526 (Colo. App. 2010) ("For a claim for tortious interference with a contract to be viable, a valid contract must exist."), *aff'd*, 266 P.3d 1110 (Colo. 2011).

Similarly, as to the interference with prospective business advantage claim, Mr. Zurborg made clear that after it terminated its relationship with ABI, it had no interest in selling its company. Skilcraft Dep. 31:3-10 (Herzig Decl. Ex. A). Therefore, Skilcraft would have no reason to engage ABI, so there is no prospective business advantage with which to interfere. *See Branta, LLC v. Newfield Prod. Co.*, 310 F. Supp. 3d 1166, 1213-14 (D. Colo. 2018) ("[I]n order to prove that there is a protected prospective business relationship, the plaintiff must show that there is 'a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope.'" (quoting *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1119 (10th Cir. 2009)).

## VI.    Mr. Rowell Has Not Been Unjustly Enriched (Sixth Claim)

"To prevail on an unjust enrichment claim, a party 'must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.'" *Scott v. Scott*, 2018 COA 25, ¶ 47, 428 P.3d 626, 636, *cert. denied*, No. 18SC243, 2018 WL 5052214 (Colo. Oct. 15, 2018) (quoting *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 2016 CO 64, ¶ 63, 382 P.3d 821, 833 (Colo. 2018)).

Again, ABI's contention that Mr. Rowell has been unjustly enriched is nothing but rank speculation, a fact vividly displayed in ABI's response to Mr. Rowell's interrogatory asking for "each and every benefit that Mr. Rowell has allegedly obtained at ABI's expense and the improper or unlawful means used to obtain each and every benefit," to which ABI could only hazard that "ABI believes that Rowell may have obtained some benefits through competing investment banks and ABI will seek that information in discovery, which is ongoing."  ABI Resp. to Rowell Interrog. No. 17 (Herzig Decl. Ex. C). Written discovery is now complete and there is *nothing* in the record even hinting that Mr. Rowell received *any* benefit from any competing investment bank.[8] The absence of such evidence is wholly unsurprising given that Mr. Rowell made no effort to sell Skilcraft after the company terminated ABI in December 2017, so there obviously could have been no benefit conferred.

---

[8] Notably, while ABI served document requests, interrogatories, and requests for admission on Mr. Rowell, it did not make any effort to inquire about any such alleged benefits received, presumably recognizing that none existed.

## CONCLUSION

For the foregoing reasons, Mr. Rowell's motion for summary judgment should be granted in its entirety. ABI's complaint should be dismissed with prejudice.

Respectfully submitted,

/s/*Aaron Herzig*

Aaron Herzig (*pro hac vice*)
Medora Akers (*pro hac vice*)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel: (513) 381-2838
Fax: (513) 381-0205
aherzig@taftlaw.com
makers@taftlaw.com

Michael R. Greco, #48320
Kevin J. Burns, #44527
Fisher & Phillips LLP
1801 California Street, Suite 2700
Denver, Colorado 80202
Tel: (303) 218-3650
Fax: (303) 218-3651
mgreco@fisherphillips.com
kburns@fisherphillips.com

*Attorneys for John Rowell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2019 I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following:

Colin Barnacle
Ashley Calhoun
Akerman LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
ashley.calhoun@akerman.com
colin.barnacle@akerman.com

*Attorneys for Plaintiff*

*/s/Medora Akers*