IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-01015-RBJ

AARON, BELL INTERNATIONAL, INC., a Colorado corporation,

     Plaintiff,

v.

JOHN ROWELL, an individual,

     Defendant.

---

## ORDER

---

     This matter is before the Court on defendant John Rowell's motion for summary judgment. ECF No. 47. For the reasons discussed herein, the motion is granted in part and denied in part.

## BACKGROUND

     Plaintiff Aaron, Bell International, Inc., ("ABI") is an investment banking service provider. It initiated this action against Defendant John Rowell, ABI's former executive vice president, chief operating officer, and managing director. ABI claims that Mr. Rowell intentionally interfered with ABI's business operations, primarily a transaction ABI had developed for its client, Skilcraft, LLC ("Skilcraft"). It also claims that Mr. Rowell misappropriated and disclosed trade secrets and other confidential information.

     Mr. Rowell joined ABI in 2016. ECF No. 47 (Defendant John Rowell's Motion for Summary Judgment). He alleges that shortly after he began, ABI president Ralph Bellizzi became "belligerent and hostile, repeatedly berating and degrading Mr. Rowell." *Id.* Mr.

Rowell no longer wished to work for ABI and executed a "Transition Employment Agreement and Release of All Claims" ("transition agreement") with ABI on September 9, 2017. ECF No. 13 (Transition Agreement). Under the agreement, Mr. Rowell would continue to finish ongoing projects. His employment would cease either ten days after all "transition deals have been completed," "as agreed mutually in writing," or for cause. *Id*. The agreement also included a confidentiality provision, a two-year non-competition provision, and a non-disparagement provision. *Id*.

During the transition period, Mr. Rowell was expected to finish a transaction for the sale of Skilcraft. *Id*. During his work on Skilcraft, Mr. Rowell generated two letters of interest as well as two letters of intent from potential buyers interested in purchasing Skilcraft. ECF No. 50 (Declaration of Ralph Bellizzi on behalf of ABI); ECF No. 47. Despite these offers, on December 5, 2017 Skilcraft terminated its agreement with ABI. ECF No. 49 (Plaintiff ABI's Response to Motion for Summary Judgment).

A central question in this dispute is why Skilcraft chose to terminate. Mr. Rowell alleges that it had nothing to do with him. He asserts that he made diligent efforts to generate interest in the sale, shown by the multiple letters of interest and purchase offers for Skilcraft he received. ECF No. 47. He claims that despite his diligence, Skilcraft decided the offers were lower than desired, and that it was no longer interested in trying to sell. *Id*. Mr. Rowell points to testimony by Skilcraft's CEO and Rule 30(b)(6) representative John Zurborg to support this argument. ECF No. 47-1 (Deposition of John Zurborg). Mr. Zurborg testified that Skilcraft terminated its relationship with ABI only because it did not receive the value it had hoped for from the offers, not because of anything Mr. Rowell said or did. *Id*. at 59:19-21, 66:4-9. He further testified that he believed Mr. Rowell gave his best effort to try to create a transaction for Skilcraft while

working for ABI.  *Id*. at 41: 18-21. The letters of intent, according to Zurborg, offered purchase prices of approximately $28 million and $27 million respectively.  *Id*. at 51:3-52:20.  Yet Skilcraft was hoping for a differently structured transaction with a purchase price of at least $30 million.  *Id*. at 51:14-15.  Mr. Zurborg explained that the prices Mr. Rowell and ABI generated were likely hampered by concerns over Skilcraft's projected earnings and by Skilcraft's unionization.  *Id*. at 53:7-9, 53:21-54:7.

In contrast, ABI says that the Skilcraft deal fell through because of Mr. Rowell.  It alleges that Mr. Rowell disparaged ABI to Skilcraft in an attempt to undermine ABI's agreement with Skilcraft and enrich himself.  ABI claims it discovered this disparagement from former ABI employee Chuck Caswell.  As evidence, ABI submitted a declaration of ABI president Ralph Bellizzi.  ECF No. 50.  According to Mr. Caswell, Mr. Rowell told Skilcraft that ABI was "grossly understaffed," "lacked sufficient resources to service Skilcraft's transaction," "did not prioritize Skilcraft's needs," and "was incapable of meeting Skilcraft's needs."  *Id*.

ABI also alleges Mr. Rowell disclosed confidential and trade secret information about the Skilcraft deal to a competitor, First Line Advisors, LLC., ("First Line").  ECF No. 49.  In January of 2018, ABI discovered an email sent by Patrick Vaughan of First Line.  The email, sent on January 2, 2018 by Mr. Vaughan to the email "jrowell@aaron*bell.com," reads:

> John, Thank you for taking the time to speak with me today re: Skilcraft. As a follow-up, I'd like to discuss potential next steps tomorrow with you and my colleague, Alison Kennedy. Please let me know how your schedule looks and we can arrange a call. Finally, can you please reply to this email to confirm you received this? Best, Patrick

ECF No. 50-10.  Mr. Rowell says he did not receive this email, which seems likely because Mr. Rowell's email at ABI was "jrowell@aaron-bell.com" and not "jrowell@aaron*bell.com."  ECF No. 47.  ABI does not allege that Mr. Rowell either received the email or responded to it.  ECF No. 49.

On January 10, 2018 ABI sent Mr. Rowell a letter terminating him for cause. ECF No. 47-1. The letter laid out allegations that Mr. Rowell had breached his transition agreement and demanded that Mr. Rowell return ABI "documents, ESI, and tangible things" in his possession and submit his devices to a forensic examination. *Id*.

During discovery for this case, ABI also uncovered another email. This one was sent on January 4, 2018 by Mr. Vaughan to Mr. Zurborg at Skilcraft. *Id*. It reads:

> John, We have a client who has an interest in your fabrication division. Upon some hunting, we learned that you are being represented by John Rowell, and therefore reached out to him. My colleague made a couple of attempts, leaving multiple voicemail messages. No response. I also called John, and finally was able to reach him. He informed me that you may be "close" to finishing the transaction, therefore I asked for clarity if he wanted to speak further or if the deal was done. He said he would contact me the next morning but I never heard from him. Based on the transaction being close to the finish line, I tried calling him multiple times. my last attempt, he sent me a text to leave him alone. Based on this, I decided I would reach out to you directly to see if you are interested in a potential investment in/buyout of your fabrication division. Please let me know if there is room to get a seat at the table or if you already have decided on the right partner. Thank you very much in advance for reading my email, and I look forward to hearing from you. Best, Patrick.

*Id*.

ABI also produced electronic records of an ABI communication log detailing a December 19, 2017 call between Skilcraft's Mr. Zurborg and ABI's Mr. Caswell. The subject of the communication was described in the ABI log as "Discuss Engagement Termination." ECF No. 50-8.

Based on these allegations, ABI brings six claims against Mr. Rowell. ABI claims (1) Mr. Rowell breached the transition agreement by (a) failing to maintain confidentiality of the existence and details of the Skilcraft transaction; (b) attempting to usurp and divert the Skilcraft transaction; (c) disparaging ABI to Skilcraft, and (d) failing to timely return ABI's information after termination; (2) Mr. Rowell misappropriated its trade secrets; (3) Mr. Rowell commercially disparaged ABI; (4) Mr. Rowell breached his duty of loyalty to ABI; (5) Mr. Rowell interfered

with ABI's contracts and prospective business advantages; (6) Mr. Rowell unjustly enriched himself.  ECF No. 49.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50. (internal citations omitted).  The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

### A. **Breach of Contract**

To recover on its Colorado state law breach of contract claim, ABI must prove (1) the existence of a contract (the transition agreement); (2) that ABI performed under the contract; (3) that Mr. Rowell failed to perform under the contract; and (4) resulting damages.  *Long v. Cordain*, 343 P.3d 1061, 1067 (Colo. App. 2014).  The parties do not dispute the first two elements.  However, ABI claims Mr. Rowell failed to perform under his transition agreement

and such failure resulted in damages.  ABI asserts four theories of breach: that Mr. Rowell (a) breached the confidentiality provision; (b) attempted to usurp and divert the Skilcraft deal; (c) disparaged ABI to Skilcraft; and (d) failed to return ABI information as required.  ECF No. 49.  I address each theory and corresponding damages argument in turn.

    1.  <u>Confidentiality</u>

ABI claims Mr. Rowell breached the confidentiality provision by disclosing the existence of the Skilcraft deal and some of its details.  ECF No. 4 (Plaintiff ABI's Compliant).  ABI alleges that these disclosures "caused Skilcraft to terminate its relationship with ABI and to continue to not do business with ABI," which in turn caused ABI damages.  ECF No. 49.  In response, Mr. Rowell argues he did not disclose any confidential information about the Skilcraft deal, and that ABI cannot prove damages.  ECF No 47.

    a.  <u>Disclosure of Confidential Information</u>

The confidentiality provision in the transition agreement requires that the "employee will hold in strictest confidence and not disclose Confidential Information . . . to anyone who is not an employee of ABI or to any employee of ABI that does not have access to said Confidential Information without express written permission from ABI's President."  ECF No. 13.  The agreement defines confidential information as "any trade secrets or ABI proprietary information, including, but not limited to techniques, processes, operating methods, cost, pricing, financial data, business plans, and proposals, customer lists, data and information that ABI received in confidence from any other party, or any other secret or confidential matters of ABI."  *Id.*

ABI asserts that the very existence of its deal with Skilcraft is confidential information.  It explains that "in the private M&A industry, clients, potential clients, deals, potential deals, and, essentially, everything related to our work, is highly confidential."  ECF No. 50.  It seems to

me that whether the existence of the deal was "confidential information" is a factual question ABI would have to prove at trial. However, Mr. Rowell has not argued that the existence of the deal was not covered by the confidentiality provision.

To show that Mr. Rowell disclosed the existence of the deal, ABI points to the first Vaughan email, in which Mr. Vaughan states "[t]hank you for taking the time to speak with me re: Skilcraft." ECF No. 50-10. ABI argues that this demonstrates that Mr. Rowell disclosed or at least acknowledged the Skilcraft deal's existence to Mr. Vaughan. ECF No. 49. This email could be read two ways: either to suggest that Mr. Rowell told Mr. Vaughan that the Skilcraft deal existed, or, in light of the other evidence, to suggest that Mr. Vaughan pestered Mr. Rowell for details about the Skilcraft deal to no avail. Yet I must take all evidence in the light most favorable to ABI, and so I find that a reasonable jury could conclude from this that Mr. Rowell disclosed that the Skilcraft deal existed.

To show that Mr. Rowell disclosed details of the deal, ABI points to the second Vaughan email. *Id.* In that email Mr. Vaughan states that he discovered Skilcraft was represented by Mr. Rowell, and that the Skilcraft deal was "close" to finishing a transaction. *Id.* This is the only detail ABI can point to. It presents no specific facts showing Mr. Rowell disclosed any other details of the Skilcraft transaction. Despite this, ABI has at least raised a genuine dispute about whether Mr. Rowell told Mr. Vaughan that the transaction was close to finishing.

b. Damages

ABI claims that it incurred damages due to Skilcraft's termination of its agreement in December of 2017. If Skilcraft had accepted one of the offers ABI generated, Skilcraft would have owed ABI a significant fee. ECF No. 50. ABI also claims lost resources dedicated to the

Skilcraft transaction. *Id.* All of ABI's damages are tied to the loss of the Skilcraft deal. This means ABI must show that the alleged breaches caused ABI's loss.

I find that there is no genuine dispute as to whether Mr. Rowell's alleged breaches in confidentiality caused ABI's loss, because the evidence submitted indicates that they did not occur until after Skilcraft's termination. Skilcraft terminated the agreement on December 5, 2017. ECF No. 49. Both the disclosure of the deal and its details are alleged to have occurred in a conversation with Mr. Vaughan preceding the first Vaughan email, sent January 2, 2018. ECF No. 50-10. In that email, Mr. Vaughan thanks Mr. Rowell for speaking with him "today," suggesting that conversation occurred on January 2 as well. Taking Mr. Vaughan at his word, as ABI asks me to do, there is no question to submit to the jury as to whether Mr. Rowell's breaches of confidentiality caused ABI's damages from loss of the Skilcraft agreement.

2. Non-Competition

Next, ABI claims that Mr. Rowell breached his transition agreement by attempting to usurp the deal the Skilcraft deal for his own benefit and divert the deal to ABI's competitor, First Line. ECF No. 49. In response, Mr. Rowell argues there is no evidence he attempted to do either, and ABI cannot prove damages. ECF No 47.

a. Usurping and Diverting

Mr. Rowell's transition agreement states that he:

> shall not, during the continuance of this Agreement and within two (2) years after the termination of this Agreement use his position at ABI and / or his knowledge gained in his position at ABI to 1) benefit himself or other third party to the detriment of ABI 2) divert or attempt to divert from ABI any business that ABI has, to the knowledge of Employee, enjoyed from any other individual or entities and/or 3) solicit or induce any employee or ABI to cease employment with ABI. Employee shall not use his knowledge of the ABI marketing pipeline to solicit individual or entities.

ECF No. 13.

First, to show Mr. Rowell's attempt to usurp the Skilcraft deal, ABI points to the Vaughan emails. It argues the emails suggest that Mr. Rowell continued to work on a Skilcraft deal after Skilcraft terminated its agreement with ABI. The emails show that Mr. Vaughan contacted Mr. Rowell in January of 2018. Though Skilcraft cut ties with ABI in December, in January Mr. Rowell told Mr. Vaughan the deal was "close to finishing." In other words, Mr. Rowell indicated the deal was still ongoing. This could suggest, as ABI claims, that Mr. Rowell continued to work on the deal after Skilcraft had terminated its agreement with ABI. According to ABI, this amounts to usurpation of the deal.

Mr. Zurborg's testimony challenges all this. Mr. Zurborg stated that after he sent the letter of termination to ABI on behalf of Skilcraft, he did not receive a response from Mr. Rowell. ECF No. 47-1, 59:16-60:22. Mr. Zurborg states that he did not hear back from Mr. Rowell until "late January or early February" of 2018. *Id.* Rather than continuing to work surreptitiously with Skilcraft in the month following termination, Mr. Zurborg suggests that Mr. Rowell had no contact with Skilcraft at all. However, taking the evidence in the light most favorable to ABI, I think a reasonable jury could conclude from the Vaughan emails that Mr. Rowell continued to work on Skilcraft after the termination of the deal.

Second, to show Mr. Rowell attempted to divert the deal to First Line, ABI points again to the Vaughan emails. ECF No. 49. In the first email, Mr. Vaughan thanks Mr. Rowell for "taking the time to speak with me today re: Skilcraft." ECF No. 50-10. This indicates, at best, that Mr. Rowell told Mr. Vaughan that the Skilcraft deal existed. Nothing in the email could reasonably be interpreted to suggest that Mr. Rowell attempted to divert the deal to First Line. In the second email Mr. Vaughan states that First Line made multiple attempts to contact Mr. Rowell, who did not respond; and once he was reached he told Mr. Vaughan that the deal was

close to finishing and not to contact him again.  ABI says these emails show Mr. Rowell's "exploration" of the deal with First Line.  *Id.*  On the contrary, they tend to demonstrate the opposite, i.e., that Mr. Rowell refused to communicate with First Line regarding Skilcraft. Additionally, Mr. Zurborg testified that Mr. Rowell never attempted to divert the Skilcraft deal away from ABI.  ECF No. 47-1, 22:4-7.  Looking at this evidence, no reasonable jury could find that Mr. Rowell attempted to divert the deal.

There is a genuine factual dispute about whether Mr. Rowell continued to work on the Skilcraft deal after termination of the agreement.  There is no genuine dispute about whether Mr. Rowell attempted to divert the deal to Skilcraft.

> b. Damages

ABI claims that Mr. Rowell's attempted usurpation and diversion caused Skilcraft's termination and the resulting losses.  ECF No. 49.  This argument suffers from the same problems as the confidentiality claim. The alleged usurpation and diversion of the deal could not have caused Skilcraft's termination, because on the evidence presented, they occurred after it. Similarly, the alleged diversion first began on January 2, 2018, the date of the first email communication between Mr. Vaughan and Mr. Rowell.  ECF No. 50-10.

ABI has not raised a genuine factual dispute about whether Mr. Rowell's attempts to usurp and divert caused the alleged damages.

> 3. Disparagement

ABI alleges that Mr. Rowell told Skilcraft that ABI was "grossly understaffed," "lacked sufficient resources to service Skilcraft's transaction," "did not prioritize Skilcraft's needs," and "was incapable of meeting Skilcraft's needs."  ECF No. 47-1.  Mr. Rowell argues that he never made any disparaging statements about ABI, and that ABI cannot prove damages.

a. <u>Disparaging Statements</u>

A party attempting to avoid summary judgment can rest its allegations on affidavits or declarations, *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56, so long as the affidavit contains specific facts and not just conclusory statements, *Told v. Tig Premier Ins. Co.*, 149 F. App'x 722, 725 (10th Cir. 2005).[1]

Here, both parties rely on testimony regarding the existence of disparaging statements. ABI relies on Mr. Bellizzi's declaration. Mr. Bellizzi states that Mr. Caswell told him that Mr. Rowell made such statements to Skilcraft. ECF No. 49; ECF No. 50. In contrast, Mr. Rowell points to Mr. Zurborg's testimony. When asked repeatedly and in many forms whether Mr. Rowell ever disparaged ABI, Mr. Zurborg responded "no." ECF No. 47-1, 24:21-25:19.[2] Mr. Zurborg also testified that the only reason Skilcraft terminated its agreement was because it did not get the value it hoped for from the offers ABI generated. *Id.*

For present purposes I will assume that Mr. Caswell will testify about the Rowell statements, so that the apparent hearsay issue will not exist. I cannot resolve issues of credibility of conflicting witnesses, particularly regarding the weight of the evidence. I instead must draw all inferences in favor of ABI, the nonmoving party. *Anderson*, 477 U.S. at 255. Doing so, I must conclude that a reasonable jury could find Mr. Rowell made such statements.

---

[1] "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995)). *See also Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir.1993) ("Conclusory statements are insufficient to defeat a motion for summary judgment.").

[2] "Q: Did Mr. Rowell ever describe ABI as grossly understaffed to you? A: No;" "Q: It next says that he said that ABI lacked -- this is not quoted, but just generally stated, ABI lacked sufficient resources to service Skilcraft's transactions. Did Mr. Rowell ever say or indicate anything like that to you? A: No;" "Q: It then says that ABI -- that he told you that ABI did not prioritize Skilcraft's needs. Did Mr. Rowell ever indicate or say anything like that to you? A: No;" "Q: It then says that Mr. Rowell stated that ABI was incapable of meeting Skilcraft's needs. Did Mr. Rowell ever say or indicate anything like that to you? A: No."

b. <u>Damages</u>

Again, ABI claims that it incurred damages due to loss of the Skilcraft transaction. To show that this occurred because of Mr. Rowell's disparagement, ABI points to Mr. Bellizzi's declaration, which states that Skilcraft terminated the agreement and refused to accept the offers "because of Mr. Rowell's . . . statements about ABI detailed above." ECF No. 50. This is a conclusory statement, not a factual one. ABI presents no factual evidence that Mr. Rowell's alleged statements caused Skilcraft's actions. On the other side, Mr. Rowell points to Skilcraft's testimony that says just the opposite, that Skilcraft terminated because it did not get an offer it liked. ECF No 47-1, 66:4-9.[3] ABI has not explained why Mr. Zurborg would lie under oath or provided any other evidence besides its own conclusory assertions. ABI has not presented any specific facts placing in dispute whether Mr. Rowell's alleged disparagement caused its damages. *Told*, 149 F. App'x at 725. Thus ABI has failed to meet its burden of showing damages at this stage.

4. <u>Failing to Return Information</u>

ABI claims that Mr. Rowell failed to return ABI's information immediately upon his termination, and that it suffered damages as a result. ECF No. 4. In response, Mr. Rowell argues that he timely complied with ABI's request, and that ABI cannot prove damages resulting from his alleged failure to return the information.

a. <u>Return of Information</u>

Mr. Rowell's transition agreement requires that he return all ABI information to Mr. Bellizzi "on or before the resignation date." ECF No. 13. It does not contain a provision

---

[3] "Q: I have one last question, Mr. Zurborg. And that is just to confirm that the only reason Skilcraft didn't pursue one of the transactions that ABI brought to it was that you did not get the value that you were looking for out of those offers; is that correct? A: That is correct."

regarding when Mr. Rowell must return information upon termination for cause. The January 10, 2018 termination letter ABI sent to Mr. Rowell states

> you must immediately cease use and transmission of all ABI documents and other information in your possession, custody, or control. Any further use of transmission of such documents or information to a third party will subject to you additionally legal liability [sic]. Please contact me no later than 5:00 pm MDT on Friday, January 12, 2018, to discuss the forensic imaging of your laptop computer, telephone, and any other electronic storage devices containing ABI information, the safe return of all ABI documents and electronically stored information . . . . Further, I wish to remind you of your immediate and continuing obligations to return all of ABI's property and to preserve all documents, electronically stored information ("ESI"), and tangible things in your possession, custody or control that may relate any way to your previous work with ABI or any of your communications with or regarding Skilcraft.

ECF No. 47-1. The parties agree that Mr. Rowell contacted ABI on January 12 to discuss the return of ABI's information. ECF No. 47-1, ECF No. 49. Parties also agree that Mr. Rowell returned all ABI information and submitted his devices for forensic imaging by February 2, 2018. *Id.*

ABI argues that return within one month of termination is not immediate and therefore Mr. Rowell breached his transition agreement. ECF No. 49. However, Mr. Rowell was not obligated to return ABI information immediately. The only deadline that the transition agreement imposed was return of information "on or before the resignation date." ECF No. 13. Mr. Rowell's resignation date never occurred, so he did not violate this provision by returning the information by February 2nd. Thus, while it might be argued that Rowell did not comply with ABI's *request* for "immediate" return, failure to do so did not breach an explicit term of the parties' agreement. If one implied in the absence of an explicit term that the information must be returned within a reasonable time, I find that ABI has not shown that there is a genuine dispute as to whether Mr. Rowell failed to do this.

b. Damages

In any event, ABI has not shown that there is a genuine dispute of fact as to whether it sustained damages from the timing of the return of the information. ABI argues that "Mr. Rowell's use of ABI's trade secrets and confidential information caused Skilcraft to terminate its relationship with ABI and to continue to not do business with ABI." ECF No. 49. However, as I have discussed, the alleged delay in returning could not have caused or contributed to Skilcraft's termination of its relationship with ABI which had already occurred on December 5, 2017. ABI has not produced any evidence tending to show that it incurred damages due to the timing of when Mr. Rowell's return of information after the transition agreement was terminated by ABI.

ABI also argues that "Mr. Rowell's retention of ABI's information after his termination helped enable him to commit the bad acts at issue and caused damages to ABI's reputation and profits it otherwise would have realized." ECF No. 49. This is too conclusory to show a genuine factual dispute. ABI does not specify any "bad acts" Mr. Rowell committed after his termination that retention of the information could have enabled. All the factually specific "bad acts" that ABI alleges yielded damages occurred before Mr. Rowell's termination. There is no genuine dispute of material fact about whether Mr. Rowell's alleged failure to return ABI's information caused ABI damages.

B. **Misappropriation of Trade Secrets**

To recover on its trade secrets claim, ABI must prove (1) it possessed trade secrets, (2) which Mr. Rowell disclosed or used without consent, and (3) Mr. Rowell knew or should have known they were acquired by improper means. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993).

ABI claims that Mr. Rowell knowingly disclosed the existence and details of the Skilcraft deal, which constitute trade secrets. Mr. Rowell argues that ABI did not have trade secrets and that Mr. Rowell did not disclose any of ABI's alleged trade secrets. ECF No. 47.

1. ABI's Trade Secrets

"A party alleging misappropriation of a trade secret must produce evidence 'of the specific types of confidential information . . . with sufficient particularity to identify the existence of its claimed trade secrets.'" *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (quoting *Saturn Sys., Inc. v. Militare*, 252 P.3d 516 (Colo. App. 2011)). ABI described its trade secrets as "confidential business information relating to, inter alia, its pending transactions, its strategic partners, its pricing information, its proprietary techniques to assess core company strengths and underdeveloped value drivers, and other highly sensitive information, financial information, business opportunities for new or developing businesses, sales data, processes, marketing techniques, and pricing policies, including the very existence of the Skilcraft transaction." ECF No. 4. Mr. Rowell requested via interrogatory that ABI identify the trade secrets he allegedly misappropriated. ECF No. 47-1. ABI objected to the question and specified only that "Rowell misappropriated confidential trade-secret information related to ABI's client Skilcraft." *Id.* In subsequent responses, ABI stated that Mr. Rowell's alleged misappropriation revolved around his communication "with a competing investment bank on a prospective deal with ABI client Skilcraft." *Id.*

Mr. Rowell argues that ABI has failed to allege a trade secret with "sufficient particularity." ECF No. 47 (citing *Int'l Acad. of Bus. & Fin. Mgmt.*, 2013 WL 212640, at *9). ABI has alleged that the existence and details of the Skilcraft deal are trade secrets. This

allegation is sufficiently particular to put Mr. Rowell on notice of the information he allegedly misappropriated.

This alone does not establish that ABI had a trade secret. ABI must also show that the existence and details of the Skilcraft deal fall under the Colorado Uniform Trade Secrets Act "CUTSA") definition. A trade secret is

> any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7–74–102(4). To determine whether a trade secret exists under Colorado law, courts consider

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) (quoting *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990)).

First, the information probably wasn't available outside ABI. ABI claims that "in the private M&A industry, clients, potential clients, deals, potential deals, and, essentially, everything related to our work, is highly confidential." ECF No. 50. ABI also requires confidentiality agreements from its employees and nondisclosure agreements from its clients. ECF No. 47-1. Taken together, ABI has alleged that the existence and details of the deal were either unavailable outside ABI.

Second, little is clear about the extent to which this information is known by ABI employees. ABI admits that it provides all employee with access to some client

information.  ECF No. 47-1[4]  But all ABI computer systems were password protected so that "only authorized employees and independent contracts could gain access."  *Id.*  Access to hard copy files is limited to "only ABI's president and bookkeeper."  *Id.*  Mr. Rowell has not made any allegations that the Skilcraft deal was common knowledge within ABI.  Neither has ABI alleged that the transaction was internally kept secret.  This factor thus does not weigh for or against ABI.

Third, as detailed above, ABI has alleged reasonable precautions to protect the secrecy of the information.  ABI says its client information is kept in password-protected computer software.  Each employee had unique login credentials.  Hard-copy files were "locked and restricted," with only two ABI officers holding keys.  *Id.*  ABI clients and prospective clients signed nondisclosure agreements, employees and job candidates signed confidentiality agreements.  *Id.*

Fourth, the information appears to be valuable.  For evidence of this, we need look no further than First Line's behavior upon discovering the existence of the Skilcraft deal.  After learning this information, however it may have occurred, Mr. Vaughan repeatedly attempted to contact Mr. Rowell, before ultimately contacting Skilcraft directly.  Mr. Vaughan's persistence provides at least some evidence that the existence and details of the deal were valuable pieces of information.

Fifth, the amount of effort expended in obtaining the information is unclear.  Neither party has provided any information regarding the effort expended in obtaining the information.  ABI has alleged that it incurred significant damages from employee time

---

[4] In responding to an interrogatory describing ABI efforts to maintain secrecy or confidentiality of its alleged trade secrets, ABI states "all of ABI's employees had access to, and required access to, ABI's client information in connection with performing their jobs."

spent developing the transaction. ECF No. 50. Without more specificity, however, this factor does not weigh for or against ABI.

Sixth, the time and expense required for duplication by others is also unclear. Like the fifth factor, neither party has made specific claims about how much effort another party would require to develop this information. Thus, this factor does not weigh for or against ABI.

Though some factors do not indicate a trade secret, ABI has alleged that the information was valuable, and that it took significant precautionary measures to protect it. ABI has shown there is at least a genuine dispute about whether the existence of the Skilcraft deal was a trade secret.

## 2. Disclosure of Trade Secrets

ABI alleges that, first, in order for First Line to have discovered the existence of the Skilcraft deal, Mr. Rowell must have disclosed it to them. Second, ABI argues that even if First Line did not learn of the deal through Mr. Rowell, Mr. Rowell confirmed its existence in the conversation Mr. Vaughan alludes to in the first email. Third and finally, ABI argues that Mr. Rowell also provided details of the deal's status to First Line, as shown by Mr. Vaughan's claim that Mr. Rowell told him the deal was close to concluding. ECF No. 49. In response, Mr. Rowell argues that the second email instead shows that Mr. Vaughan learned of the deal before communicating with Mr. Rowell.

ABI's first argument, that Mr. Rowell initially disclosed the existence of the deal to First Line, is based solely on conclusory statements. Citing the Vaughan emails, ABI concluded that the only way First Line could have discovered the existence of the deal was through Mr. Rowell. According to ABI, the crucial fact is that Mr. Vaughan "learned of the Skilcraft deal and Mr.

Rowell's involvement '[u]pon some hunting.'" ECF No. 50. From this phrase alone, Mr.

Bellizzi concluded that

> Mr. Rowell breached confidentiality regarding the Skilcraft deal at some point before any communication with First Line. This is because in the private M&A industry, clients, potential clients, deals, potential deals, and, essentially, everything related to our work, is highly confidential and the only way First Line would be in a position to know anything about ABI or Mr. Rowell's association with Skilcraft in the first place would be due to a confidentiality breach to others outside the close circle of authorized people. I did not breach confidentiality and I am aware of no other employees at ABI or anyone else who were in a position to breach this confidentiality. As such, the inescapable conclusion is that Mr. Rowell himself breached his confidentiality obligations with regard to the Skilcraft deal.

*Id.* Mr. Vaughan's phrase alone cannot support this allegation. Mr. Bellizzi's speculation about

the source of Mr. Vaughan's information does not amount to even colorable evidence that Mr.

Rowell was Mr. Vaughan's initial source. ABI provides some general evidence in its

interrogatories about the security it employs to protect confidential information. *Id.* But it has

given me no reason to think that Mr. Rowell is the sole possible source of information regarding

the Skilcraft deal. ABI has not put the fact of such a disclosure in dispute.

But ABI's second argument, that Mr. Rowell disclosed or confirmed the existence of the

Skilcraft deal in a conversation with Mr. Vaughan on January 2, 2018, does at least create a

factual dispute. Mr. Vaughan's email thanks Mr. Rowell for speaking with him regarding

Skilcraft. This suggests that Mr. Rowell at least acknowledged the existence of the deal in

conversation with Mr. Vaughan. Whether he did so, and whether merely confirming information

Mr. Vaughan appeared to already have constitutes a disclosure, does raise a genuine dispute for a

jury to resolve.

There is no genuine factual dispute regarding ABI's last argument, that Mr. Rowell told

First Line details of the Skilcraft deal. In Mr. Vaughan's second email to Skilcraft, he states that

Mr. Rowell "informed me that you may be 'close' to finishing the transaction." ECF No. 47-1.

Even if Mr. Rowell did tell Mr. Vaughan the deal was close to finishing, this would not have disclosed any accurate details of the Skilcraft deal. At the time of Mr. Rowell and Mr. Vaughan's alleged conversation, Skilcraft had already terminated with ABI, and Mr. Rowell's statement would have been a false statement of fact, rather than disclosure of secret information. A false statement about the deal is not a detail of the deal protected by CUTSA. ABI has not raised a genuine dispute as to whether Mr. Rowell disclosed secret details about the Skilcraft transaction to Mr. Vaughan.

Nevertheless, the bottom line is that ABI has raised enough of a factual dispute about whether Mr. Rowell disclosed the *existence* of the Skilcraft deal to survive summary judgment. Mr. Rowell has not argued, and so I have not addressed, whether ABI has raised a genuine factual dispute regarding damages it incurred from disclosure of its trade secrets.

## C. <u>Commercial Disparagement</u>

In order to prove commercial disparagement ABI must show (1) Mr. Rowell made a false statement, (2) which was published to a third party and (3) derogatory to the ABI's business in general, (4) through which Mr. Rowell intended to cause harm to ABI's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) which caused special damages. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007).

As discussed under ABI's breach of contract claim, ABI alleges that Mr. Rowell told Skilcraft that ABI was "grossly understaffed," "lacked sufficient resources to service Skilcraft's transaction," "did not prioritize Skilcraft's needs," and "was incapable of meeting Skilcraft's needs." ECF No. 47-1. Mr. Rowell argues that no such statements were made, and that ABI incurred no damages from the statements.

The analysis here remains the same as above: ABI and Mr. Rowell both point to third parties who confirm their positions. Because I cannot make decisions on credibility and weight, I concluded that ABI has raised as genuine factual dispute regarding element one, whether Mr. Rowell made such statements. However, ABI cannot point to any facts that show it incurred damages from such statements. All it points to are conclusory statements of its own. Thus, ABI has not raised genuine dispute on element six, the damages it incurred as a result of such statements.

### D. **Breach of Duty of Loyalty**

In order to recover on its breach of loyalty claim, ABI must show (1) Mr. Rowell had a duty of loyalty that required him to act solely for ABI's benefit, and (2) Mr. Rowell failed to do so. *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1095 (D. Colo. 2016). ABI must also prove that (3) Mr. Rowell's breaches caused it to suffer damages. *Int'l Tele-Marine Corp. v. Malone & Assocs., Inc.*, 845 F. Supp. 1427, 1435 (D. Colo. 1994) (finding a genuine issue of fact regarding whether the breach of fiduciary duty caused the claimant's damages and therefore defendant was not entitled to summary judgment).

ABI alleges that Mr. Rowell breached his duty of loyalty in several ways: "(1) by failing to protect and maintain the confidentiality of the Skilcraft transaction, (2) usurping, subverting, and diverting the Skilcraft transaction for his own gain, and (3) disparaging ABI." ECF No. 49. Mr. Rowell does not contest that he had a duty of loyalty to ABI. ECF No. 47. Instead, he argues that he did not breach confidentiality, nor attempt to usurp or divert the Skilcraft deal, nor say anything disparaging about ABI.

This claim mirrors ABI's claims that Mr. Rowell breached his contract by disclosing confidential information, attempting to usurp or divert the Skilcraft transaction, and disparaging

ABI.  The same analysis above applies here.  ABI has presented sufficient allegations that Mr. Rowell disclosed the existence and details of the Skilcraft transaction, and disparaged ABI to Skilcraft.  ABI did not present sufficient allegations that Mr. Rowell attempted to usurp or divert the transaction for his own gain.

ABI again fails to show that Mr. Rowell's alleged breaches caused its damages.  As discussed above, ABI's argument that Mr. Rowell's breaches of confidentiality caused damages fails because the alleged breaches occurred *after* the termination of the Skilcraft deal.  The claims fail because ABI has not presented facts showing Mr. Rowell's disparaging statements caused its damages.  ABI relies on conclusory statements, while Mr. Rowell points to Mr. Zurborgs testimony on behalf of Skilcraft stating that the deal was not terminated because of any such statements.[5]  Because ABI has presented insufficient evidence on element three, that the alleged breaches caused damages, these claims all fail.

### E.  <u>Interference with Contracts and Prospective Business Advantage</u>

To recover on its contract interference claim, ABI must prove (1) the existence of a contractual relationship between ABI and a third party; (2) Mr. Rowell knew or reasonably should have known of the contract and (3) intentionally and improperly interfered with that contract; (4) Mr. Rowell's conduct caused the breach or non-performance of the contract by the third party; and (5) ABI suffered damages.  *Mueller v. Swift*, No. 15-CV-1974-WJM-KLM, 2017 WL 2362137, at *7 (D. Colo. May 31, 2017).  Prospective business advantage requires all the same elements as contract interference, except the existence of a contract.  *Id.*  at *14.  Instead,

---

[5] *Compare* ECF No. 50 (Declaration of Mr. Ralph Bellizzi): "I believe Skilcraft terminated the Engagement and continues to choose not to do business with ABI because of Mr. Rowell's breaches of confidentiality, statements about ABI detailed above, and his efforts to usurp, subvert, and divert the Skilcraft client relationship," *with* ECF No. 47-1 (Deposition of Mr. John Zurborg), 66:4-9: "Q: I have one last question, Mr. Zurborg.  And that is just to confirm that the only reason Skilcraft didn't pursue one of the transactions that ABI brought to it was that you did not get the value that you were looking for out of those offers; is that correct? A: That is correct."

"the plaintiff must show intentional and improper interference such that a particular contract is prevented from being formed." *Id.*

ABI claims that Mr. Rowell (1) used confidential and trade secret information to usurp and divert the Skilcraft deal as well as "other contracts or prospective contracts with ABI's customers;" (2) "disparaged ABI to Skilcraft, First Line, and others," and (3) improperly induced "Skilcraft and others to breach existing contracts or refuse to enter into future contracts with ABI." ECF No. 49. Regarding contract interference, Mr. Rowell argues again that there is no evidence he usurped or diverted the Skilcraft transaction, and that any such conduct did not cause Skilcrafts' termination. ECF No. 47. Regarding the prospective business advantage, Mr. Rowell also argues that after Skilcraft terminated the contract, there was no prospective business relationship for him to interfere with. *Id.*

ABI's first two theories are identical to the breach of contract and duty of loyalty theories. It claims Mr. Rowell's confidentiality breaches, attempts to usurp or divert, and disparagement caused Skilcraft to end its agreement with ABI. These claims all fail to present a genuine question about whether Mr. Rowell's alleged actions caused Skilcraft to terminate. Mr. Rowell's alleged confidentiality breaches, usurpation, and diversion all occurred after Skilcraft had already terminated. ABI failed to present more than colorable evidence that Mr. Rowell's alleged disparagement caused Skilcraft to terminate the agreement. Thus, those theories fail on element four, whether the alleged conduct caused Skilcraft to terminate its contract with ABI.

ABI's third theory presents a slight variation on the same idea. In its complaint, ABI alleges that Mr. Rowell "intentionally and improperly induced Skilcraft and others to breach existing contracts or to refuse to enter into future contracts with ABI. Such intent and improper conduct is supported by, among other things, Defendant Rowell's use of ABI's confidential and

trade secret information and open disparagement of ABI to Skilcraft while still an ABI employee." ECF No. 4.

With regard to any "others" Mr. Rowell allegedly induced to break with ABI, ABI has presented nothing more than conclusory statement, and has not raised a genuine factual dispute. With regard to Skilcraft, ABI essentially claims that the Mr. Rowell's alleged breach of confidentiality and disparagement caused Skilcraft to terminate its agreement. This theory is essentially no different that the first two. The alleged interference in the form of confidentiality breaches occurred after Skilcraft had terminated the agreement. ABI has presented insufficient evidence that any disparagement caused Skilcraft to take such action. Both ABI's contract interference and prospective business advantage claims fail because ABI has not raised a dispute on element four.

### F. <u>Unjust Enrichment</u>

To recover on an unjust enrichment claim, ABI must establish (1) Mr. Rowell received a benefit, (2) it was at ABI's expense, and (3) under the circumstances it would be unjust for Mr. Rowell to retain the benefit without compensating ABI. *Scott v. Scott*, 428 P.3d 626, 636 (Colo. App. 2018).

ABI claims that Mr. Rowell obtained proceeds from "ill-gotten contracts or prospective contracts with Skilcraft and others." ECF No. 50. Mr. Rowell argues that he obtained no benefit from any alleged behavior.

ABI has presented no supporting evidence aside from the above statement by Mr. Bellizzi. A claim cannot stand on a single conclusory statement. *Adler v. Wal-Mart Stores, Inc.*,

144 F.3d 664, 672-74 (10th Cir. 1998) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact.")[6]. ABI does not raise a genuine factual dispute.

## ORDER

Mr. Rowell's motion for summary judgment, ECF No. 47, is GRANTED IN PART AND DENIED IN PART. Summary judgment is GRANTED with regard to ABI's first claim for relief (breach of contract), its third claim (commercial disparagement), its fourth claim (breach of duty of loyalty), its fifth claim (interference with contract and prospective business advantage), and its sixth claim (unjust enrichment.) Summary judgment is DENIED with regard to ABI's second claim (misappropriation of trade secrets).

DATED this 17th day of October, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[6] Neither are Mr. Bellizzi's statements redeemed from being found conclusory by the fact that they appear in a "declaration" or affidavit: "[r]egardless of their form, the statements remain conclusory."